1  Adam M. Rose (210880)
   adam@frontierlawcenter.com
2  Manny M. Starr (319778)
   manny@frontierlawcenter.com
3  FRONTIER LAW CENTER
   23901 Calabasas Road, STE #2074
4  Calabasas, CA 91302
   Telephone: (818) 914-3433
5  Facsimile: (818) 914-3433

6  Attorneys for Plaintiff
   Junior Aguilar
7
   Shannon B. Nakabayashi (State Bar No. 215469)
8  JACKSON LEWIS P.C.
   50 California Street, 9th Floor
9  San Francisco, California 94111-4615
   Telephone:  (415) 394-9400
10 Facsimile:  (415) 394-9401
   E-mail:  Shannon.Nakabayashi@jacksonlewis.com
11
   Isabella L. Shin (State Bar No. 294937)
12 JACKSON LEWIS P.C.
   333 West San Carlos St. – Riverpark Tower
13 Suite 1625
   San Jose, California 95110
14 Telephone: (408) 579-0404
   Facsimile: (408) 454-0290
15 E-mail:  Isabella.Shin@jacksonlewis.com

16 Attorneys for Defendants
   AMERICAN-PARAGON PROTECTIVE SERVICES, LLC.
17 AMERICAN EAGLE PROTECTIVE SERVICES CORP.

18              UNITED STATES DISTRICT COURT

19           NORTHERN DISTRICT OF CALIFORNIA

20

21 JUNIOR AGUILAR, on behalf of himself    ) CASE NO. 5:20-cv-01982-SVK
   and all others similarly situated,      )
22                                         ) PARTIES' NOTICE OF AND JOINT
                    Plaintiff,             ) PETITION FOR CONFIRMATION
23                                         ) OF ARBITRATION AWARD AND
          v.                               ) ENTRY OF ORDER IN THE
24                                         ) DISTRICT COURT;
   AMERICAN-PARAGON PROTECTIVE            ) DECLARATION OF ADAM ROSE;
25 SEVICES, LLC., AMERICAN EAGLE          ) DECLARATION OF KEVIN LEE;
   PROTECTIVE SERVICES CORP.,             ) PROPOSED JUDGMENT
26                                         )
                    Defendants.            ) Date: April 9, 2024
27                                         ) Time: 10:00 a.m.
                                           ) Ctrm: 6
28 _____)

                              -1-

TO THE COURT:

Please take notice that on April 9, 2024 at 10:00 a.m. in Courtroom 6 of the Northern District of California located at 280 S. First St., San Jose, CA 95113, all parties will petition pursuant to 9 USC § 9 to confirm the award reached in the JAMS arbitration, based on the following facts and arguments:

MEMORANDUM OF POINTS AND AUTHORITIES

I.    INTRODUCTION AND BACKGROUND

Plaintiff Junior Aguilar ("Aguilar") filed this Fair Labor Standards Act case March 20, 2020 in the Northern District based on federal question jurisdiction. Plaintiff and members of the collective worked for defendants American-Paragon Protective Services and American Eagle Protective Services Corp. ("Defendants") at the NASA Ames Research Facility, located at Moffett Airfield.

Since the airfield is on federal property, the federal enclave doctrine applies and consequentially state law is preempted. The sections below explain the history and theories of the case.

II.    ARBITRATION CASE HISTORY

On January 26, 2021, the court granted Defendants' motion to compel arbitration. Dkt. No. 35. A demand for arbitration was submitted to JAMS on February 18, 2023, and JAMS initiated arbitration on June 2, 2021 (there was a slight delay as JAMS was changing its electronic filing procedure).

On August 25, 2021 Arbitrator Robert Baines held the first arbitration management conference and ordered a briefing schedule regarding whether the matter could proceed as a collective matter under the Fair Labor Standards Act. On October 21, 2021, Arbitrator Baines issued a decision to allow the arbitration to proceed as a collective action.

Defendants then requested a hearing to determine whether Plaintiff was required to exhaust collective bargaining agreement grievance procedures before

proceeding to the certification phase. After the matter was briefed, on December 17, 2021 Arbitrator Baines issued an order that the collective bargaining agreement impacted FLSA rights, and that Plaintiff could proceed to the certification stage.

On April 4, 2022 Arbitrator Baines granted conditional FLSA certification after a hearing held on April 1, 2022 following significant briefing.

Before the notice was disseminated to members of the collective, the parties agreed to attend a second mediation (there was a first mediation on September 1, 2020 before the matter was ordered to arbitration). The second mediation took place on July 20, 2022 with Michael Loeb.

The parties settled in conjunction with the second mediation; nonetheless it took some time to finalize the settlement agreements. There is a settlement agreement for Mr. Aguilar's individual claims, and a settlement agreement for the collective action claims.

On September 18, 2023 Arbitrator Baines granted Plaintiff's motion for preliminary approval and ordered that notices should be mailed to members of the collective to allow them the opportunity to optin. The notices were mailed by the settlement administrator on October 17, 2023. The opt-in window closed on December 1, 2023. According to the settlement administrator, there were 32 opt-ins out of the 116 notices that were mailed, yielding 27.6% return rate. Arguments in favor of confirming the award follow.

III.    THE COURT IS AUTHORIZED TO CONFIRM THE AWARD

Pursuant to 9 USC § 9, "If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration … then at any time within one year after the award is made any party to the arbitration may apply to the court … for an order confirming the award."

Since all parties agree to confirmation of the award and entry of the judgment, notice to adverse parties is not required.

## IV.   BASIS OF THE DISPUTE

Mr. Aguilar and members of the collective worked as security guards at the facility (and were employed by Defendants).

There were two aspects of the dispute; first, Mr. Aguilar claimed that he and members of the collective worked off the clock by donning and doffing their uniforms before and after their shifts, and that he and members of the collective had to attend briefings for which they were not paid.

The second aspect was that Mr. Aguilar and members of the collective did not receive overtime at the correct regular rate since they were paid health and welfare supplements that were not factored into the overtime rates.

Defendants contested the above and had different views on the aspects of the claims.  As to Mr. Aguilar's off the clock claims, Defendants maintained that members of the collective were not required to change into their uniforms on site. Additionally, any claims regarding briefings involved only a small portion of the collective and only took a few minutes such that the time was *de minimis.* As to Plaintiff's regular rate claims, Defendants contended that there was no requirement to include health and wellness pay into the overtime calculation because 29 CFR § 778.215 allows for exclusion of such benefits from the regular rate of pay.

## V.   RECITAL OF SETTLEMENT TERMS

As stated above, there are two settlement agreements. The first is an individual settlement agreement that provides for a $7,500 service enhancement to Mr. Aguilar for his continued involvement and participation in the case over nearly four years.

The second settlement agreement provides for the following:

1.   Gross settlement of $175,000

2.   Service enhancement of $7,500 (as referred to above)

3.   Settlement administration of $5,750.

4.   Attorney costs of $22,000

5.      Attorney fees of $58,275

This leaves a net settlement fund of $81,475.

For the collective members who opted in, their proportionate share is determined to the following:

- Participating Collective Member Security Officers will receive 1.0 point for each eligible workweek during the FLSA collective period
- Participating Collective Member Security Police Officers will receive 1.3 points for each eligible workweek during the FLSA collective period
- Then, to calculate each Collective Member's proportionate share, the settlement administrator must add all points for the Participating Collective Members (those who opted in) to obtain the denominator;
- Divide each Participating Collective Member's points by the denominator to determine their portion of the Net Settlement Fund;
- Multiply each Participating Collective Member's portion of the Net Settlement Fund to determine each Member's Net Amount which will be the amount of their respective checks.

The settlement provides that within 15 business days of the Final Approval Order, Defendants will fund the Total Settlement Amount by placing the amount into a qualified settlement fund maintained by the settlement administrator. Payments to members of the collective will be made 14 days after funding the settlement.

The settlement agreement also encompasses that this petition will include a request for attorney fees of up to one-third of the Total Settlement Amount, and reimbursement of actual litigation expenses and costs up to $22,000. Payment of fees and costs will occur 7 days after funding of the settlement. Finally, the settlement also envisions an application for a Service Award of $7,500 to Plaintiff.

VI.    THE SETTLEMENT SHOULD BE FINALLY APPROVED

"Once employees present a proposed settlement agreement to the district court

pursuant to Section 216(b), the [c]ourt may enter a stipulated judgment if it determines that the compromise 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Brown v. TrueBlue, Inc*., No. 1:10-cv-00514, 2013 WL 5408575, *1 (M.D. Pa. Sept. 25, 2013) (citing *Cuttic v. Crozer–Chester Med. Ctr*., 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012); see also *Adams v. Bayview Asset Mgmt*., LLC, 11 F. Supp.3 d 474, 476 (E.D. Pa. 2014) (DOL supervision or court approval are the "only two ways that FLSA claims can be settled or compromised by employees," "[b]ecause of the public interest in FLSA rights").

The role of the court in FLSA class actions is distinct because, unlike its role in Rule 23 actions to serve as caretaker and protect absent class members, the court in FLSA class actions serves as gatekeeper to "ensure[ ] that the parties are not 'negotiating around the clear FLSA requirements' via settlement." *Bredbenner*, 2011 WL 1344745, at *18 (quoting *Collins v. Sanderson Farms, Inc*., 568 F. Supp. 2d 714, 720 (E.D. La. 2008)). There are no absent class members in an FLSA opt-in class.

Under the standard articulated in the seminal case of *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982): "When parties present to the district court a proposed settlement, the district court may enter a stipulated judgment if it determines that the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Cuttic*, 868 F. Supp. 2d at 466 (quoting *Lynn's Food*, 679 F.2d at 1354). Application of the *Lynn's Food* standard is a two-part inquiry: (1) is the settlement fair and reasonable and (2) does it resolve a bona fide dispute. Lastly, the court should "determine whether [the settlement] furthers or frustrates the implementation of the FLSA." *Brown*, 2013 WL 5408575, *1.

A. THE SETTLEMENT IS FAIR AND REASONABLE

District courts generally rely on Rule 23 factors to determine if an FLSA settlement is fair and reasonable. *Brown*, 2013 WL 5408575, *1. In the Ninth Circuit those factors are: the strength of the plaintiffs' case; the risk, expense, complexity,

and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Lane v. Facebook, Inc*., 696 F.3d 811, 819 (9th Cir. 2012), quoting *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998). Each of these factors is addressed below.

1. Strength of the Case

The strengths of the case were that for the minimum wage allegations including unpaid donning and doffing, and briefings, the actual shifts did not include this time since the shifts were rounded to the nearest 15-minute increments. Likewise for the overtime regular rate claim, there were items on the wage statements that were not included in the regular rate, including shift differentials and health and welfare payments.

The counterarguments to the strengths were the positions that donning and doffing onsite were not required, and that the health and welfare payments should have been excluded from the regular rate. Given the above, the settlement is fair and reasonable since it takes these items into account,

2. Risk, Complexity, and Duration of Further Litigation

The case was proceeding in arbitration. Although conditional certification was granted, Plaintiff would still need to obtain evidence for final certification. This additional discovery would likely include more depositions. There was a risk that not all depositions would yield testimony supporting the unpaid minimum wage and overtime violations. If final certification were not granted in the arbitration, the case would need to proceed to a lengthy evidentiary hearing.

### 3. Risk of Maintaining Class Action Status Throughout the Trial

As explained above, the risk comprised a possibility that the arbitrator could deny the motion for final certification. If that motion were denied, the evidentiary hearing would require a significant amount of oral testimony to prove the claims.

### 4. Amount Offered in Settlement

As argued in the motion for preliminary approval to the arbitrator, The Gross Settlement Amount is $175,000. Based on the data provided by Defendants, Plaintiff estimated a potential liability of up to $3,594,620 if Plaintiff succeeded at trial plus attorney fees and costs. Plaintiff was able to estimate the potential damages based on data provided by Defendants, including the number of employees in the putative collective and the average hourly rates of pay applicable to the putative collective members. This amount was also based on the assumption of 30 minutes average off the clock work per shift – a value that is hotly contested by Defendants.  Assuming Defendants' estimate of at most 5 minutes per employee per shift, the maximum liability amount drops to less than $600,000.

As discussed above, when accounting for the risk that the arbitrator could find that there was no compensable time worked, the risk that there was otherwise compensable time worked but that that time was *de minimis* and not recoverable, and/or the risk that Defendants may be successful in a motion to decertify the class, the settlement amount is fair and reasonable.

The settlement is approximately 29% of adjusted maximum liability of $600,000. Furthermore, with FLSA opt-in claims, no collective member will be bound by the settlement or its terms unless they filled out and returned a claim form within the claim deadline. Thus, any collective member who felt the amount is insufficient could simply have chosen to not opt-in. Since the amount each collective member will receive depends, in part, on the total number of individuals who opt-in, collective members may receive more than their estimated portion, since not every

member opted in.

As stated in the declaration of settlement administrator, there were 32 opt-ins representing 27.6% of the mailed notices which seems on par with a review of other FLSA settlements. *See, e.g., Bower v. Cycle Gear, Inc*., No. 14-cv-02712-HSG, 2016 WL 4489875 at *3 (N.D. Cal. Aug. 23, 2016) (finding acceptable an opt-in rate of 15.20%).

Thus, the opt-in members will share in the net settlement amount of $81,475 based on the points system described above.

### 5. Extent of Discovery Completed and Stage of Proceedings

Plaintiff completed two sets of written discovery, deposed Defendants' PMQ (Director of Human Resources Kathleen Peschel), deposed James Pope (Project Manager of APPS), and obtained the declarations of Obadiah Luke Whitmore, a current employee, and Michael Josef Oster, a former supervisor. Furthermore, Defendants informally provided data about the collective, including a member count, a workweek count, and a shift count, as well as samplings of payroll data.

### 6. Experience and Views of Counsel

Both Plaintiff's and Defendants' counsel have a great deal of experience in wage and hour class actions. Plaintiff's counsel has been approved as class counsel in a number of wage and hour class actions. Further, given the contested issues, the defenses presented by Defendants, the size of the collective, the number of workweeks and shifts involved, and the amount offered as settlement, all counsel agree the settlement is fair and reasonable based on the totality of the circumstances.

### 7. Presence of a Governmental Participant

No governmental entity was involved in this case.

8.  Reaction of the Class Members to the Proposed Settlement

As stated above, there were 32 opt-ins representing 27.6% of the mailed notices which seems on par with a review of other FLSA settlements. *See, e.g., Bower v. Cycle Gear, Inc.*, No. 14-cv-02712-HSG, 2016 WL 4489875 at *3 (N.D. Cal. Aug. 23, 2016) (finding acceptable an opt-in rate of 15.20%). The opt-in members will share in the net settlement amount of $81,475 based on the points system described above. The average recovery for the 32 participating members of the collective from the net settlement amount is $81,475 divided by 32, which yields a quotient of $2,546.10, an excellent result.

B.  THE SETTLEMENT RESOLVES A BONA FIDE DISPUTE

A dispute is bona fide if it involves "factual issues rather than legal issues such as the statute's coverage and applicability and when its settlement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Creed v. Benco Dental Supply Co*., No. 3:12-CV-01571, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013) (internal citations and quotation marks omitted).

A bona fide dispute under the FLSA includes computation of back wages and compensation due. *Bredbenner v. Liberty Travel, Inc*., Nos. 09-905 (MF), 09-1248 (MF), 09-4587 (MF) 2011 WL 1344745, at *18 (D.N.J. Apr. 8, 2011.) The settlement resolves a bona fide dispute regarding back wages for unpaid time, and for regular rate issues.

Further, the settlement furthers the FLSA since it furthers the FLSA's objectives of payment of wages. *See, e.g., Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981).

VII.  PLAINTIFF'S REQUESTED SERVICE AWARD SHOULD BE GRANTED

The Ninth Circuit looks to "the number of named plaintiffs receiving incentive

payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 947 (9th Cir. 2015) (internal quotation marks omitted). The settlement agreement provides for a service award of $7,500 to Plaintiff.

The $7,500 is 8% of the funds available to members of the collective (after deducting costs, attorney fees, and settlement administration). Also, courts consider the proportionality between the service award and the range of class members' settlement awards. *Dyer v. Wells Fargo Bank*, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014). The service award of $7,500 is roughly two and a half times the amount of the average collective member recovery, which is reasonable. *Id*.

Plaintiff participated in this case for nearly four years and was involved in two mediations. Pursuant to *Staton v. Boeing Co*., 327 F.3d 938, 977 (9th Cir. 2003), Plaintiff was willing to stand up regarding unpaid wages in a case involving esoteric issues, such as federal preemption, a collective bargaining agreement, arbitration and its steps, conditional certification, two mediations, and preliminary approval. Members of the collective will benefit significantly from Plaintiff's efforts. Also, Plaintiff has negotiated and signed a discrete settlement agreement for a broader release for the $7,500 incentive. Thus, the requested service award is reasonable.

## VIII.  THE REQUESTED ATTORNEY FEES AND COSTS SHOULD BE GRANTED

The FLSA provides that the court "shall, in addition to any judgment awarded to the plaintiff ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). A district court has discretion to apply either a lodestar method or a percentage-of-the-fund method in calculating a class fee award in a common fund case. *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002).

Typically, attorneys' fees under the FLSA are determined using the lodestar

method as lodestar amounts are presumed to be reasonable." *Kerzich v. County of Tuolumne*, 335 F. Supp. 3d 1179, 1185-86 (9th Cir. 2018) (collecting cases). With approximately 250 hours detailed in the declaration of Adam Rose spent working on this case at $800 per hour, the lodestar amount is $200,000 which is nearly four times the attorney fees envisioned in the settlement agreement.

Under the lodestar method, attorneys are awarded an amount calculated by multiplying the hours reasonably expended on the litigation times their reasonable hourly rates. *Staton*, 327 F.3d at 965. (9th Cir.2003). This amount may be increased or decreased by a multiplier that reflects any factors not subsumed within the calculation, such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011.)

As explained above, involving esoteric issues, such as federal preemption, a collective bargaining agreement, arbitration and its steps, conditional certification, two mediations, two depositions, and discovery. With this backdrop, the requested attorney fees of 33.33% are reasonable and should be granted.

## IX.    THE REQUESTED COSTS SHOULD BE GRANTED

Expense awards can include reimbursements for: "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees." *In re Immune Response Secs. Litig*., 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).

The declaration of Adam Rose itemizes the expenses/costs that were reasonably incurred since the case began in March 2020. Thus, the request for reimbursement of costs should be granted.

///

///

## X.    THE REQUESTED SETTLEMENT ADMINISTRATION COST SHOULD BE GRANTED

The declaration of Kevin Lee of Phoenix Class Action Administration Solutions explains how the notices to the members of the collective were mailed, and the other duties the settlement administrator fulfilled. Therefore, the requested amount of $5,750 to the settlement administrator should be granted.

## XI.    CONCLUSION

After the long road between filing this case, arbitration, and now final approval, for the reasons in this motion and based on the supporting paperwork, the parties stipulate to confirm the arbitrator's award to approve this FLSA settlement.

Date:  January 9, 2024                              FRONTIER LAW CENTER

                                                   /s/ Adam Rose
                                                   Attorney for Plaintiff
                                                   Junior Aguilar

Date:  January 9, 2024                              JACKSON LEWIS

                                                   /s/ Isabella Shin
                                                   Attorney for Defendants
                                                   American-Paragon Protective
                                                   Services, LLC, et al.
                                                   4887-0600-5914, v. 1